Gilbert DE LOS SANTOS, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 04–05–00694–CR, 04–05–00695–CR,
04–05–00696–CR, 04–05–00697–CR,
04–05–00698–CR.

Court of Appeals of Texas,
San Antonio.

Nov. 22, 2006.

Suzanne M. Kramer, San Antonio, for appellant.

Marc S. Ledet, Asst. Dist. Atty., Floresville, for appellee.

Sitting: SANDEE BRYAN MARION, PHYLIS J. SPEEDLIN and REBECCA SIMMONS, Justices.

## OPINION

Opinion by PHYLIS J. SPEEDLIN, Justice.

Gilbert De Los Santos appeals from his aggravated sexual assault convictions and cumulative sentence of 180 years imprisonment. On appeal, De Los Santos asserts that he received ineffective assistance of counsel, the trial court erred in submitting the jury charge with a general verdict form, and in admitting the testimony of the child complainants. We affirm the trial court's judgments.

### Background

Gilbert De Los Santos was charged in seven separate indictments with several counts of aggravated sexual assault of his two step-daughters. The indictments alleged penile penetration of the children's mouths and anuses over a period of time. The seven cases were jointly tried before a jury. Both of the child complainants, who were 11 years old and 9 years old, testified at trial. The jury convicted De Los Santos in five of the seven cases, and assessed punishment at 90 years imprisonment and a $10,000 fine in each cause number. In imposing sentence, the trial court ordered that one 90–year sentence would run consecutive to the other concurrent 90–year sentences, for a cumulative sentence of 180 years. De Los Santos timely appealed.

### Analysis

*Ineffective Assistance of Counsel.* In his first issue, De Los Santos asserts he received ineffective assistance of counsel because his attorney did not "object to the misjoinder of the complainants in a single prosecution." The record reflects that, prior to the commencement of voir dire, the court noted that the State had requested that the seven cases be consolidated for purposes of trial. Defense counsel affirmatively stated she had no objection. The court proceeded with a joint jury trial, but submitted separate jury charges and entered separate judgments. On appeal, De Los Santos argues that his attorney's failure to object and request separate trials amounted to ineffective assistance because there was no strategic reason for proceeding with a joint trial since the court could still cumulate his sentences, as it ultimately did. *See* Tex. Penal Code Ann. § 3.03 (Vernon Supp.2006).

To establish ineffective assistance of counsel, a defendant must prove by a preponderance of the evidence that: (1) his trial counsel's performance was deficient; and (2) the deficient performance prejudiced him to such a degree as to deprive him of a fair trial. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Hernandez v. State,* 988 S.W.2d 770, 770 n. 3 (Tex.Crim.App. 1999); *Harling v. State,* 899 S.W.2d 9, 12 (Tex.App.-San Antonio 1995, pet. ref'd). To show deficient performance, the first prong of the *Strickland* standard, De Los Santos must prove that his counsel's performance fell below an objective standard of reasonableness and must rebut the presumption that counsel's trial decisions were based on sound trial strategy. *Thompson v. State,* 9 S.W.3d 808, 812–13 (Tex.Crim.App.1999). To satisfy this prong, any allegations of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Id.* at 813. The appellate court does not look at isolated acts or omissions to determine the effectiveness of counsel, but reviews the totality of the representation. *Id.; Harling,* 899 S.W.2d at 12.

De Los Santos' allegation of ineffective assistance of counsel was not raised in his motion for new trial; therefore, no evidence was developed in support of the claim. The record is silent as to counsel's reasons for not requesting separate trials. In the absence of a developed evidentiary record which adequately reflects the motives behind counsel's action and inaction, it is extremely difficult to prove that counsel's performance was deficient. *Rylander v. State,* 101 S.W.3d 107, 110–11 (Tex. Crim.App.2003). Absent record evidence to the contrary, we must presume that counsel's conduct fell within the wide range of reasonable professional assistance. *Thompson,* 9 S.W.3d at 813–814. To conclude that the representation by De Los Santos' counsel was deficient without a proper record exploring counsel's trial strategy would require this court to speculate as to counsel's motivation and reasoning, which we may not do. Moreover, consolidation of the cases for trial was not improper. *Salazar v. State,* 127 S.W.3d 355, 364–65 (Tex.App.-Houston [14th Dist.] 2004, pet. ref'd) (joinder of cases involving more than one complainant for purposes of trial is not improper). The fact that another attorney might have pursued a different course of action or tried the case differently does not establish ineffective assistance of counsel. *Dickerson v. State,* 87 S.W.3d 632, 637 (Tex.App.-San Antonio 2002, no pet.). Without evidence in the record to both establish deficiency and rebut the presumption of reasonable assistance, De Los Santos is unable to satisfy the first prong of *Strickland. Thompson,* 9 S.W.3d at 814; *Jackson v. State,* 973 S.W.2d 954, 957 (Tex.Crim.App.1998) (record on direct appeal is often particularly inadequate to reflect the failings of trial counsel when the errors complained of are errors of omission). Failure to make the

required showing of either *Strickland* prong, deficient performance or sufficient prejudice, will defeat a claim for ineffective assistance. *Thompson,* 9 S.W.3d at 813. We hold that De Los Santos has failed to establish deficient performance by his trial counsel; therefore, we overrule his first issue.

**Jury Charge on Two–Count Indictments.** In his second issue, De Los Santos asserts the trial court committed charge error by submitting a general verdict form to the jury, with "no instructive unanimity language with respect to the different counts within the different indictments." In analyzing a jury charge complaint, we first determine (1) whether error exists in the charge, and then (2) whether sufficient harm resulted from the error to compel reversal. *Ngo v. State,* 175 S.W.3d 738, 743–44 (Tex.Crim.App. 2005). The degree of harm necessary for reversal depends on whether the defendant preserved error by objection. *Id.* at 743. When a defendant fails to object, or affirmatively states that he has no objection to the charge as De Los Santos did, we will not reverse unless the record shows the defendant suffered "egregious harm." *Id.* at 743–44; *Bluitt v. State,* 137 S.W.3d 51, 53 (Tex.Crim.App.2004) (holding affirmative denial of objection is equivalent to failure to object to jury charge error). We will first address whether the charge contained error.

1. *Error in Jury Charge.* Of the five indictments on which De Los Santos was found guilty, two indictments alleged only one count of aggravated sexual assault, and the other three indictments alleged two counts of aggravated sexual assault. De Los Santos' jury charge complaint pertains only to the three two-count indictments.[1] The application paragraphs

---

1. Two of those indictments charged the com-    mission of aggravated sexual assault on the

submitted in the charge on the two-count indictments instructed the jury to find De Los Santos guilty of aggravated sexual assault if they found beyond a reasonable doubt that he had intentionally or knowingly caused his sexual organ to penetrate the anus of the child (count one), *or* if they found beyond a reasonable doubt that he had intentionally or knowingly caused his sexual organ to penetrate the mouth of the child (count two). Each charge contained a general instruction informing the jury that their verdict must be by unanimous vote, but there was no separate unanimity instruction in the application paragraph. In each case, the jury foreperson signed a general verdict form finding De Los Santos "guilty" of aggravated sexual assault without specifying the particular count(s) on which he was convicted. Essentially, De Los Santos' complaint on appeal is that the jury could have been less than unanimous on the two-count indictments, with some jurors finding he penetrated the anus of the child, and other jurors finding he penetrated the mouth of the child.

▮ Jury unanimity is required in all criminal cases. *Ngo,* 175 S.W.3d at 745; TEX. CONST. art. V, § 13; TEX.CODE CRIM. PROC. ANN. art. 36.29(a) (Vernon 2006). "An unanimous jury verdict ensures that the jury agrees on the factual elements underlying an offense—it is more than mere agreement on a violation of a statute." *Francis v. State,* 36 S.W.3d 121, 125 (Tex.Crim.App.2000). Each juror must agree that the defendant committed the "same, single, specific criminal act." *Ngo,* 175 S.W.3d at 745. Jury unanimity is not violated when the jury is disjunctively instructed on alternate means or theories

of committing the same offense. *Martinez v. State,* 129 S.W.3d 101, 103 (Tex.Crim. App.2004); *see also Jefferson v. State,* 189 S.W.3d 305, 313–14 (Tex.Crim.App.2006) (holding due process does not require jury unanimity on particular "act or omission" submitted as alternate means of committing the conduct element of the offense of injury to a child). However, if the charge disjunctively submits two separate offenses, and not merely alternative means of committing a single offense, it creates the possibility of a non-unanimous jury verdict and constitutes error. *See Francis,* 36 S.W.3d at 124–25.

▮ The first step in a unanimity challenge is to examine the statutory language to determine whether the legislature created multiple, separate offenses, or a single offense with alternative manners or means of commission. *Jefferson,* 189 S.W.3d at 311. The phrase "manner or means" describes *how* the defendant committed the specific criminal act. *Ngo,* 175 S.W.3d at 745. The Penal Code defines aggravated sexual assault, as it applies to this case, as:

(a) A person commits an offense:

(1) if the person:

(B) intentionally or knowingly:

(i) causes the penetration of the anus or sexual organ of a child by any means; [or]

(ii) causes the penetration of the mouth of a child by the sexual organ of the actor;

and

(2) if:

---

same date against the same child through penetration of the child's anus (count one) and penetration of the child's mouth (count two). One of the indictments charged the commission of aggravated sexual assault against the same child through penetration of the child's anus on or about August 9, 2004 (count one), and penetration of the child's mouth on or about August 15, 2004 (count two).

(B) the victim is younger than 14 years of age.

TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(i) & (ii), (a)(2)(B) (Vernon Supp.2006). The Court of Criminal Appeals has held that section 22.021 criminalizes specific sexually assaultive conduct of several different types, providing for separate and distinct offenses within the statute rather than alternative means of committing one statutory offense. *Vick v. State*, 991 S.W.2d 830, 833 (Tex.Crim.App.1999) (the statute's structure and specificity reflects legislature's intent to separately criminalize any act which constitutes the proscribed conduct); *Lopez v. State*, 108 S.W.3d 293, 300 n. 28 (Tex.Crim.App.2003) (noting that under section 22.021, each act is a separate assault against the child); *In re M.P.*, 126 S.W.3d 228, 231 (Tex.App.-San Antonio 2003, no pet.) (aggravated sexual assault can include multiple statutory offenses in one transaction). Various acts of sexual abuse committed over a period of time do not comprise a single offense; rather, a person who commits "multiple discrete assaults against the same victim" is liable for separate prosecution and punishment for each separate act of abuse. *Vernon v. State*, 841 S.W.2d 407, 410 (Tex.Crim.App. 1992); *Klein v. State*, 191 S.W.3d 766, 774–75 (Tex.App.-Fort Worth 2006, pet. granted); *Martinez v. State*, 212 S.W.3d 411, 418 (Tex.App.-Austin 2006, pet. struck).

■ Here, each of the two-count indictments charged De Los Santos with two separate offenses consisting of two separate and distinct sexual assaults against the same complainant occurring on the same or different dates. *See Barnes v. State*, 165 S.W.3d 75, 87 (Tex.App.-Austin 2005, no pet.) (person who commits more than one discrete sexual assault against same complainant may be convicted and punished for each separate act, even if acts were committed in close temporal proximi-

ty); *see also Tear v. State*, 74 S.W.3d 555, 562 (Tex.App.-Dallas 2002, pet. ref'd) (every act of sexual assault alleged in a separate count of an indictment is a separate criminal offense, not merely a different method of committing the same offense) (citing *Francis*, 36 S.W.3d at 124). The application paragraphs in the charge submitted the two separate criminal acts in the disjunctive, instructing the jury that they could find De Los Santos guilty if they found he penetrated *either* the anus (count one) or mouth (count two) of the child. The jury was not specifically instructed, however, that they had to unanimously agree on which particular act De Los Santos committed in order to find him guilty, thereby creating the possibility that some jurors could find him guilty of one act of penetration, while other jurors found him guilty of the other act of penetration. Therefore, it was error to submit the two separate offenses disjunctively without a specific unanimity instruction because it allowed for the possibility of a non-unanimous jury verdict. *See Ngo*, 175 S.W.3d at 744 (when state charges different criminal acts under same statute or different statutes, jury must be instructed that it cannot return guilty verdict unless it unanimously agrees on commission of any one of the criminal acts); *see also Francis*, 36 S.W.3d at 125; *In re M.P.*, 126 S.W.3d at 231. The error here, as in *Ngo*, was not in submitting the two separate criminal acts in the disjunctive or in using a general verdict form, but in failing to instruct the jury that it must unanimously agree on which one of the criminal acts the defendant committed. *See Ngo*, 175 S.W.3d at 748–49 (defendant's failure to request election means jury may be instructed on both criminal acts in the disjunctive, but does not eliminate his right to unanimous verdict). We hold, therefore, that the court's disjunctive submission of the separate offenses without an accompanying instruc-

tion that each juror must agree on which particular offense was committed was error.[2] *Id.* at 744; *Francis,* 36 S.W.3d at 125. Having found charge error, we must next determine whether the error caused De Los Santos egregious harm.

**2. *Egregious Harm.*** Because De Los Santos did not object to the jury charge error at trial, we may reverse only if the record shows the error was so egregiously harmful that he was denied a fair and impartial trial. *Ngo,* 175 S.W.3d at 750 n. 48; *Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App.1984). Egregious harm includes errors that affect "the very basis of the case," "deprive the defendant of a valuable right," or "vitally affect a defensive theory." *Ngo,* 175 S.W.3d at 750; *Hutch v. State,* 922 S.W.2d 166, 171 (Tex.Crim.App.1996). We assess the degree of harm in light of (1) the jury charge as a whole, (2) the state of the evidence, including the contested issues and weight of probative evidence, (3) the arguments of counsel, and (4) any other relevant information in the record. *Almanza,* 686 S.W.2d at 171; *Huizar v. State,* 29 S.W.3d 249, 251 (Tex.App.-San Antonio 2000, pet. ref'd).

We first evaluate the jury charge as a whole. The charge in each of the cases contained two references to the jury's duty to return a unanimous verdict: (1) a general instruction to the jury that its verdict "must be by a unanimous vote of all members of the jury ... It will not be proper for you to reach your verdict by lot, chance, any system of averages, or by any other method than by a full, fair, and free exchange of the opinion of the individual

jurors ...;" and (2) in describing the role of the presiding juror, an instruction as to the manner of certifying their verdict "when you have unanimously agreed upon a verdict." *C.f., Ngo,* 175 S.W.3d at 745 (the word "unanimously" appeared in jury charge only once, in section dealing with selection of jury foreman). The application portion of the charge was divided into two separate application paragraphs delineated as "Count One" and "Count Two" which were submitted in the disjunctive. Read as a whole, the charge correctly instructed the jury that they had to unanimously agree on at least one of the application paragraphs, either Count One or Count Two, in order to find De Los Santos guilty. *See id.* at 754 (Hervey, J., dissenting, stating that the disjunctive submission of three application paragraphs is what distinguishes *Ngo* from *Francis* where a single application paragraph disjunctively submitted two separate offenses). This is a situation, unlike *Ngo,* in which the jury charge was missing one important word, "unanimously," in the application paragraphs which reasonable jurors could infer from the context of the entire charge. *C.f., Ngo,* 175 S.W.3d at 751.

Furthermore, the charge error here was not compounded by affirmative misstatements of the law on jury unanimity by the trial judge or either of the attorneys. In *Ngo,* the defendant was charged with credit card abuse based on an indictment that alleged three separate criminal acts of stealing the credit card, receiving the stolen card, and fraudulently presenting the credit card, rather than one offense with three alternative manner and means. *Id.* at 744. The prosecutor told the jurors

---

**2.** The problem created by this jury charge could have been avoided if the court had instructed the jury to reach a separate verdict on each count. *See* Tex.Code Crim. Proc. Ann. art. 37.07(1)(c) (Vernon 2006) (providing that when the charging instrument contains more

than one count or if two or more offenses are consolidated for trial, the jury shall be instructed to return a finding of guilty or not guilty in a separate verdict as to each count and offense submitted to them); *see also Tear,* 74 S.W.3d at 562.

during voir dire that there were three ways the State could prove the defendant committed the offense of credit card abuse, and that "if three of you . . . feel like he stole the credit card and used it, six of you think that he received it and three of you think he presented it, it doesn't matter which one you think he did. It can be a mix and match, whichever one you believe." *Id.* at 750. The prosecutor then reiterated his misstatement of the law during his closing argument and urged the jury to return a guilty verdict without agreeing on any one of the three criminal acts. *Id.* at 742. In addition, during the defendant's voir dire, in ruling on an objection by the State, the trial judge similarly told the jurors, "[t]here's three ways alleged that the offense can be committed . . . the State may prove one to the satisfaction of part of the jury, another one to the satisfaction of others, the third one to the satisfaction of another part of the jury, but if you found the defendant guilty, you must believe the State has proved one of the three paragraphs in its entirety." *Id.* at 750–51. The Court of Criminal Appeals found that the jury charge error in disjunctively submitting the three separate offenses without a unanimity instruction caused the defendant egregious harm based in part on the prosecutor's and trial judge's affirmative misstatements of the law as permitting a "mix and match" verdict. *Id.* at 751. Similarly, in *Clear v. State*, an aggravated sexual assault of a child case, the court found egregious harm based in part on the prosecutor's erroneous statements to the jury in closing argument that, "four of you could decide . . . [the State has] proven the finger penetration . . . [a]nother four of you could say . . . [the State has] proven everything [a]nd the remaining four of you could say . . . I believe the State proved that there was penile penetration . . . [y]ou don't all have to agree on which manner we've

proven it to you, as long as we've proven one of these." *Clear v. State*, 76 S.W.3d 622, 623–24 (Tex.App.-Corpus Christi 2002, no pet.) (holding jury charge error consisting of disjunctive submission of three separate sexual assault offenses without unanimity instruction caused egregious harm to defendant). Unlike in *Ngo* and *Clear*, the De Los Santos jury was *never* told they could return a "mix and match" verdict with some jurors finding De Los Santos guilty of one application paragraph and other jurors finding him guilty of the other application paragraph. There was no affirmative misstatement of the law on jury unanimity in this case.

Finally, in reviewing the state of the evidence, we note that De Los Santos did not contest that the two children had been sexually abused. Rather, his defense was that he was not the abuser. De Los Santos did not assert that he was guilty of some of the alleged acts, but not others. His defensive theory was that he did not commit *any* of the alleged sexual assaults; he did not attempt to draw distinctions between the different acts of penetration. As in *Martinez*, De Los Santos' trial strategy presented the jury with an "all or nothing" decision, *i.e.*, either he was the perpetrator of the sexual assaults or he was not. *See Martinez*, 212 S.W.3d at 421. The State presented probative evidence, the sufficiency of which is not contested on appeal, of multiple acts of penile penetration of both children on multiple occasions. Unlike in *Ngo*, none of the alleged acts were mutually exclusive. *See id.* (citing *Ngo*, 175 S.W.3d at 751–52).

Based on the jury charge as a whole and the entire record in this case, we conclude that De Los Santos was not denied a fair and impartial trial, and thus did not suffer egregious harm, in the three cases with two-count indictments. The jury was never told that they could return a "mix and

match" verdict, or that they need not reach a unanimous verdict. To the contrary, when read as a whole the charge informed the jurors of their duty to reach a unanimous verdict on one application paragraph or the other, or both. The charge error did not affect the very foundation of the cases, deny De Los Santos a valuable right, or significantly affect his defensive theory that he was not the person who committed the acts of sexual abuse. *See Hutch,* 922 S.W.2d at 172. Accordingly, we overrule De Los Santos' second issue.

■■■■ *Testimony by Child Complainants.* Finally, in his third issue, De Los Santos challenges the competency of the child complainants to testify, asserting the trial court abused its discretion "when it failed to determine, prior to testimony, that the children complainants understood the nature of the oath to tell the truth and their duty and obligation to tell the truth." *See* Tex.R. Evid. 601(a), 603. The competency of a witness is an issue to be determined by the court and its ruling will not be disturbed on appeal absent an abuse of discretion. *Broussard v. State,* 910 S.W.2d 952, 960 (Tex.Crim.App.1995). In general, we review a trial court's decision to admit or exclude evidence for an abuse of discretion, and will not reverse as long as the court's ruling was within the zone of reasonable disagreement. *Montgomery v. State,* 810 S.W.2d 372, 391 (Tex.Crim.App. 1990).

■■■ The record reflects that each child complainant took the oath to tell the truth, and that the trial judge questioned each child regarding her understanding of the difference between a truth and a lie, and her duty to tell the truth, before permitting her to testify. *See* Tex.R. Evid. 601(a)(2), 603. Each child then testified without any objection by De Los Santos. To preserve an issue for appellate review,

an appellant must make a specific objection to the trial court at the time the alleged error arises and must obtain a ruling on the objection. Tex.R.App. P. 33.1(a). Because he did not object during trial to the children's testimony on the basis of incompetency, De Los Santos has failed to preserve the issue and may not raise it for the first time on appeal. *See Mendez v. State,* 138 S.W.3d 334, 341–42 (Tex.Crim.App.2004) (except for complaints involving systemic requirements, or rights that are waivable only, all other complaints, whether constitutional, statutory, or otherwise, are forfeited by failure to comply with Rule 33.1(a)); *see also Rich v. State,* 823 S.W.2d 420, 421–22 (Tex.App.-Fort Worth 1992, pet. ref'd); *Lujan v. State,* 626 S.W.2d 854, 860 (Tex.App.-San Antonio 1981, pet. ref'd) (failure to object to child's competency at trial barred presentation of issue on appeal).

■■■ Furthermore, even if the issue had been preserved, we hold the trial court did not abuse its discretion in finding the children competent to testify. Under Rule 601(a)(2), a child is competent to testify unless it appears to the court that she does not possess sufficient intellect to relate the transactions with respect to which she is interrogated. Tex.R. Evid. 601(a)(2); *Broussard,* 910 S.W.2d at 960. The considerations in determining a child witness's capacity to narrate involve "both an ability to understand the questions asked and to frame intelligent answers and . . . a moral responsibility to tell the truth." *Torres v. State,* 33 S.W.3d 252, 255 (Tex.Crim.App.2000)(quoting *Watson v. State,* 596 S.W.2d 867, 870 (Tex.Crim.App. 1980)). There is no certain age below which a child is automatically deemed incompetent to testify. *Fields v. State,* 500 S.W.2d 500, 503 (Tex.Crim.App.1973). In evaluating a child witness's competency, the court examines the child's responses to

qualification questions as well as the child's entire testimony. *In re A.W.,* 147 S.W.3d 632, 634 (Tex.App.-San Antonio 2004, no pet.).

Here, both the trial court and the prosecutor used abstract questioning as well as concrete examples to inquire into and establish each child's capacity to narrate the events, understanding of the difference between the truth and a lie, and understanding of her obligation to tell the truth. The children's responses indicated they each had the ability to intelligently recall and narrate the events, understood the difference between the truth and a lie, and understood their moral responsibility to tell the truth; at trial, each child gave coherent, specific testimony about the location, timing and details of the offenses. Any inconsistencies in the children's testimony about the specific incidents goes to their credibility, not their competency to testify. *In re A.W.,* 147 S.W.3d at 635; *Woods v. State,* 14 S.W.3d 445, 451 (Tex. App.-Fort Worth 2000, no pet.); *Macias v. State,* 776 S.W.2d 255, 257 (Tex.App.-San Antonio 1989, pet. ref'd). Based on their answers to the qualification questions and their testimony as a whole, we conclude the children were competent to testify. *See Upton v. State,* 894 S.W.2d 426, 429–31 (Tex.App.-Amarillo 1995, pet. ref'd); *Dufrene v. State,* 853 S.W.2d 86, 88–89 (Tex. App.-Houston [14th Dist.] 1993, pet. ref'd) (noting that a child no longer needs to understand the "obligation of the oath," but simply the duty to be truthful). De Los Santos' third issue is overruled.

Based on the foregoing reasons, we affirm the trial court's judgments.